**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cr-00394-TWP-DLP |
| | ) | |
| LAPRE APPLE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on a Motion to Suppress Evidence filed by Defendant LaPre Apple ("Apple") (Filing No. 66). Apple is charged with Count I: Possession with Intent to Distribute Controlled Substances; Count 2: Possession of a Firearm within 1,000 Feet of a School Zone; and Count III: Carrying a Firearm During and in Relation to a Drug Trafficking Crime (Filing No. 42 at 1–2). Apple requests that the Court suppress all evidence recovered following a search and seizure of his automobile and person, in violation of his Fourth Amendment rights. An evidentiary hearing was held on September 24, 2021. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law and **denies** the Motion to Suppress.

**I.    FINDINGS OF FACT**

These findings of fact are based on testimony from witnesses Detective Gregory Kessie ("Det. Kessie"), Officer Sergio De Leon Rodriguez ("Officer Rodriguez") and Alcohol Tobacco Firearms and Explosives Special Agent Todd Bevington ("Special Agent Bevington"), the exhibits admitted at the evidentiary hearing, and the parties' filings.

Det. Kessie has been an officer with the Indianapolis Metropolitan Police Department ("IMPD") since 2007. During his training, he attended IMPD's training academy and later IMPD's

narcotics school and was assigned as a narcotics investigator from 2011-2016. As a result of his training and experience, Det. Kessie is "pretty familiar" with the odor of both raw and burnt marijuana. In 2019, he was a Detective Sergeant with the Indiana Crime Guns Intelligence Center ("CGIC") which is presently known as the Indiana Crime Guns Task Force. CGIC was a gun unit of officers who conduct firearms investigations.

On December 3, 2019, Det. Kessie pulled over a vehicle in Indianapolis, Indiana, after witnessing the vehicle exceeding the posted speed limit and failing to signal before changing lanes. (Filing No. 71-1 at 1, 2.)

As Det. Kessie and Officer Rodriguez approached the vehicle (Det. Kessie on the driver side and Officer Rodriguez on the passenger side), they immediately smelled the odor of marijuana (Filing No. 2 at 3). Det. Kessie recognized from prior CGIC investigations both Apple, who was the driver of the vehicle, and the front passenger, later identified as Jayvon Taylor ("Taylor") (Filing No. 71 at 2). Through his investigations, Det. Kessie had learned that Apple sometimes carried a firearm on his right side. *Id*., Filing No. 2 at 3. Because Det. Kessie had previous experiences with the occupants, he believed that one or both may be armed.[1] Det. Kessie instructed Apple to let down his window and Apple complied so that he could speak with the officer. Det. Kessie asked if either occupant was in possession of a firearm and they both responded no, though Taylor kept looking toward Apple's right hip. (Filing No. 71-1 at 2.) As he stood outside the driver's door and open window, Det. Kessie again smelled the odor of marijuana.

---

[1] Apple was a person of interest in an investigation reference a shooting that occurred on the west side of Indianapolis on Mother's Day 2019. During his investigation, Det. Kessie reviewed Apple's public social media which included a photograph of a firearm inside of a vehicle. Det. Kessie was also aware that Apple was on probation for a firearms related offense from Illinois, and was being supervised by the Marion County Probation Office. Apple devoted much of the later three-hour suppression hearing to attacking the propriety of this investigation. The Court, however, finds most of the investigation irrelevant to whether evidence should be suppressed based on the particular circumstances surrounding this specific traffic stop. Accordingly, the Court need not discuss that investigation at length.

Officer Rodriguez was also a member of the CGIC unit, and from his training and experience was familiar with the odor of marijuana. When Officer Rodriguez approached the passenger side of the vehicle, he also smelled to odor of marijuana. Based on the marijuana smell, Det. Kessie along with Officer Rodriguez ordered Apple and Taylor out of the vehicle. As Officer Rodriguez detained Taylor, Det. Kessie observed Apple quickly reach toward the center console and activate the latch to open the lid. *Id*. Apple was opening the console to retrieve his vehicle registration. (Filing No. 76-1 at 2.) But because Det Kessie feared Apple may have been reaching for a weapon, Det. Kessie drew his firearm and ordered Apple to keep his hands on the steering wheel. Apple was asked again if he had any firearms and he answered in the affirmative and informed officers that he had a gun permit. (Filing No. 71-1 at 3.) Officers then removed a loaded Glock, model 22, .40 caliber semi-automatic handgun from the right side of Apple's waistband. Apple was handcuffed and detained. (Filing No. 71-1 at 3.) Taylor was also handcuffed. A search of Apple's person revealed $6,955.00 in cash in his sweater pocket and wallet.

Believing they had probable cause to search the vehicle, after Apple and Taylor were detained, officers searched the vehicle. During the search, officers noticed the tray holding the center cup holder was loose. *Id*. Det. Kessie knew that this particular make and model of vehicle had a natural void beneath the cup holders that could conceal contraband. *Id*. Based on that knowledge, and the fact that Apple reached in that direction when he was asked to step out of the vehicle, officers searched underneath the tray (Filing No. 71-1 at 3). There, officers found (1) an off-white substance that later tested positive for cocaine base, (2) a prescription bottle with Apple's name on it, and (3) a small marijuana nugget. While searching the rest of the vehicle, officers also found loose pieces of marijuana in the passenger and driver's door pouch. *Id*. During the search but before being interviewed, Apple stated "it wasn't even in plain sight." *Id*.

By that time, Special Agent Bevington arrived on the scene. When he approached the vehicle, he also smelled the odor of marijuana. Apple was then read his *Miranda* rights and interviewed. *Id.* During the interview, Apple made several statements: the vehicle belonged to him, he did not recall the last time he had a steady job or paycheck, he does not use drugs, the crack-cocaine did not belong to him, and Taylor did not discard any items in the vehicle. *Id.* Apple was then arrested, and Taylor was allowed to leave.

Apple was indicted on federal charges on December 17, 2019 ([Filing No. 12](#)). On June 8, 2021, he moved to suppress evidence stemming from the traffic stop ([Filing No. 66](#)). The United States of America (the "Government") responded on June 29, 2021 ([Filing No. 71](#)), and Apple replied on July 21, 2021 ([Filing No. 76](#)).[2] The Court then set the matter for an evidentiary hearing ([Filing No. 78](#)), which was held on September 24, 2021 (*see* [Filing No. 93](#)). On the date of the hearing, Taylor appeared and was identified as a potential witness for Apple, who moved for separation of witness. That motion was granted and potential witnesses, Apple, Officer Rodriguez and Special Agent Bevington reported to the witness waiting room. While in the waiting room, both Officer Rodriguez and Special Agent Bevington smelled the odor of marijuana on the person of Taylor.

## II.   CONCLUSIONS OF LAW AND DISCUSSION

The Fourth Amendment requires a search or seizure to be reasonable under the circumstances. U.S. Const. amend. IV. If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search, or it will be deemed unreasonable and unconstitutional. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001). When an officer effectuates a traffic stop and detains a person, no matter

---

[2] Though the Court granted the Government leave to file a surreply, ([Filing No. 79](#)), the Government never filed such a brief.

the length of time, it constitutes a "seizure" of "persons" under the Fourth Amendment, and thus must be reasonable.  *Whren v. United States*, 517 U.S. 806, 810 (1996).  The court in *Whren* explained that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Id.*, also, *see United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020) (reasonable suspicion of a traffic violation provides a sufficient basis to justify a traffic stop).

"Warrantless searches are considered *per se* unreasonable under the Fourth Amendment unless one of a few specifically established and well-delineated exceptions applies." *United States v. Williams,* 627 F.3d 247, 251 (7th Cir. 2010) (citing *Arizona v. Gant*, 556 U.S. 332 (2009)).  One of those exceptions is the automobile exception, "which allows law enforcement to conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains contraband or evidence of a crime." *Id.*  When there is probable cause to search a vehicle, law enforcement may search "all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments, containers, packages, and trunks." *Id.* (citing *United States v. Scott*, 516 F.3d 587, 589 (7th Cir. 2008); *United States v. Ross*, 456 U.S. 798, 823–24 (1982).  When searching a vehicle, "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *Ross*, 456 U.S. at 823.  "The probable cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *Id.* at 808.  "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

Apple asserts that the evidence seized during the traffic stop should be suppressed because the traffic stop and search were (1) unreasonable in nature and duration, (2) not incident to a lawful arrest, (3) not based on a reasonable belief that evidence of a crime would be found in the vehicle, and (4) overly broad and intrusive, (Filing No. 66 at 6–8). The Court will address each assertion in turn.

**A.** **The Reasonableness and Duration of the Stop.**

While Apple did not challenge the validity of the underlying traffic stop in his briefing, he submitted an affidavit in which he disputes that he was travelling in excess of the speed limit and affirms his belief that he properly used his turn signal when changing lanes, which is his habit. (Filing No. 76-1 at 2). Having been subjected to cross-examination on this issue, the Court finds Det. Kessie's testimony--that Apple exceeded the speed limit and made an illegal lane change, thereby committing traffic offenses and giving him probable cause to perform a traffic stop--to be credible. Because Det. Kessie observed Apple commit two traffic infractions, he had probable cause to initiate a traffic stop.

Apple next asserts that the traffic stop was unreasonable in nature and duration, and points out that "[t]raffic stops, which constitute seizures, must be justified at their inception by specific and articulable facts and must be 'reasonable' in terms of their nature and duration." (Filing No. 66 at 6 ) (quoting *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002)). Apple argues that "[w]hen officers unreasonably prolong the detention that motivated the initial traffic stop by questioning that cannot be justified by the purpose of the initial stop, that detention may become unreasonable under the Fourth Amendment." *Id.* He asserts that the traffic violations here, did not give officers a legitimate reason to question him or his passenger about the possession of a firearm—and because officers asked without a justifiable reason—the duration of the traffic stop

was unreasonably prolonged. *Id.* Additionally, while Apple acknowledges that an officer's intentions may not invalidate an otherwise valid traffic stop, he argues the initial traffic stop was pretextual and "urges the Court to consider that fact in the over-all analysis of whether the traffic stop, the nature and duration of the officers' inquiries following the stop and the ensuing search of the vehicle were reasonable under the totality of the circumstances." *Id.* at 6–7.

The Government asserts that Apple's focus on the nature and duration of the stop is irrelevant because his vehicle was not searched incident to an arrest; rather, it was searched based on probable cause after a lawful traffic stop after Det. Kessie observed Apple commit two traffic infractions and he smelled the odor of marijuana once he approached the vehicle. (Filing No. 71 at 4.) The Government points out that Apple cites no authority for the claim that an officer asking about firearms unreasonably prolongs a traffic stop, and asserts that is likely because no authority exists for such a proposition. *Id.*

The Court agrees that the nature and duration of the stop and the officers' inquiries were in no way unreasonable. The inquiry by officers at traffic stops -- are there are any firearms in the vehicle? -- is reasonable for officer safety. It is especially reasonable under the circumstances here, as officers were familiar with Apple and Taylor and they had reason to believe that one or both occupants were carrying a firearm based on past investigations. The question took a few seconds at most and did not unreasonably prolong the search.

Apple's argument that the traffic stop was pretext, stemming from the CGIF's investigation into his alleged gun activities is unavailing. Police officers may not use a traffic stop as a pretext to search for evidence. *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995). However, "if there was probable cause to make the stop, and if the stopping officer was acting with authority, the stop was not pretextual. 'So long as the police are doing no more than they are legally permitted

and objectively authorized to do, an arrest is constitutional.'" *Id.* (quoting *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir. 1989)). Moreover, the Fourth Amendment permits pretextual traffic stops as long as they are based on an observed violation of a traffic law. *Whren*, 517 U.S. at 810.

Accordingly suppression is not warranted on this basis.

**B.** **The Search of the Vehicle Was Not Incident to a Lawful Arrest and Not Based On a Reasonable Belief that Evidence Relevant to the Crime of Arrest Would Be Found in the Vehicle.**

As to his second and third contentions, Apple argues that he did not consent to a search of his person or vehicle, and he argues officers lacked probable cause or reasonable suspicion to believe that contraband or evidence of a crime would be discovered in his vehicle. (Filing No. 66 at 7.) He contends that the vehicle search "was not a legitimate search incident to a lawful arrest because (1) Mr. Apple had not been lawfully arrested; and (2) the interior of the vehicle was not 'conceivably accessible' to him." *Id.* (citing *Arizona v. Gant*, 556 U.S. 332 (2009)). Apple contends the officers lacked probable cause or reasonable suspicion to search his vehicle. *Id.* at 8. He again disputes Det. Kessie's statement that he smelled the odor or marijuana and asserts that there was no odor of marijuana coming from the vehicle. *Id.* at 3.

The Government responds that Apple's focus on whether the search incident to arrest was lawful is misplaced because Apple was not searched incident to arrest; rather, he was searched based on probable cause after a lawful traffic stop. The Government argues persuasively that the search was supported by probable cause. An officer who smells the odor of marijuana coming from a vehicle during a legitimate traffic stop, has probable cause to search the vehicle. (Filing No. 71 at 4 (citing *United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008).) The Government contends that Apple simply makes conclusory statements that there was no probable cause or reasonable suspicion. The Government concludes that "the case law is clear that any 'automobile

search justified by probable cause may extend to any part of the vehicle in which evidence or contraband might be concealed.'" *Id.* at 5 (quoting *United States v. Ledford*, 218 F.3d 684, 688 (7th Cir. 2000)).

In his reply and at the hearing, Apple argues that no marijuana odor came from his vehicle and that this factual dispute "is material and determinative of the legality of the search of the defendant's vehicle as the government claims that the odor of marijuana provided the sole basis for the search of that vehicle." (Filing No. 76 at 3.) Apple relies on the signed affidavits from himself and Taylor, both asserting that the vehicle did not smell like marijuana, that they had not smoked marijuana prior to being pulled over, and that Apple does not allow smoking in his vehicle (Filing No. 76-1; Filing No. 76-2).  Apple contends that these statements are credible because "there was a negligible amount of a substance identified as 'plant material' containing Cannabidoil (CBD) with the presence of an undetermined concentration of THC".  (Filing No. 76 at 2–3.) Further, Apple attacks the credibility of Det. Kessie because he purportedly omitted information from his declaration. *Id.* at 3.  Apple points out that Det. Kessie failed to mention that during his last investigation involving Apple, "he learned that [Apple] had a valid permit to carry the firearm; and that, during the time [Apple] was prohibited from possession of a firearm, [Det.] Kessie searched his home and found no firearms or other contraband; and that he personally requested that [Apple's] permit to carry a firearm be revoked." *Id.* (citing Filing No. 76-1).  Additionally, Apple attacks Det. Kessie's statement that he had previously arrested Taylor after finding marijuana and a firearm in a vehicle (Filing No. 76 at 3-4).  Apple adds that those charges were later dismissed "based on the complete absence of evidence that [Taylor] possessed either marijuana or a firearm." *Id.* at 4 (citing Filing No. 76-2).

The evidence does not support Apple's argument; because in weighing the credibility of the witnesses, the Court believes the three law enforcement officers (who were subjected to cross-examination) testimonies that they smelled the odor of marijuana coming from the car, and thus they had probable cause to search Apple's vehicle.  The Seventh Circuit has consistently held that a police officer who smells marijuana coming from a vehicle has probable cause to search that vehicle.  *Franklin*, 547 F.3d at 733.  In *Franklin*, the Seventh Circuit reviewed the district court's decision to deny a defendant's motion to suppress that was based on his arguments that the traffic stop was pretextual and that the search went beyond the scope of probable cause.  *Id.* at 733–34.  In affirming, the court relied on the Supreme Court directive that courts should "not entertain arguments based on the 'real' motivations behind otherwise lawful traffic stops."  *Id.* (citing *Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001)).  As to the scope of probable cause, the Seventh Circuit held that the smell of marijuana gives police officers probable cause to search the vehicle and "the search can go as far as probable cause extends, even into separate containers."  *Id.* at 735.

Here, like in *Franklin*, officers lawfully initiated a traffic stop after witnessing two traffic violations. And, again like in *Franklin*, officers detected the odor of marijuana when they approached the stopped vehicle. Contrary to Apple's assertions, the officers' testimonies are corroborated by the several pieces of loose marijuana found during the later search. Though this later-analyzed marijuana may have been higher in CBD content (compared to THC), the marijuana odor sensed by the officers was both raw and burnt.  In other words, even assuming high-CBD-content marijuana has a less-pungent scent, high-potency marijuana in terms of THC could have been the cause of the strong burnt marijuana aroma encountered by officers. In addition, the officers testified that based on their training and experience, the odor of marijuana can remain in a vehicle and on a person for some time.  Even if the odor was not emanating from the residue left

in the vehicle, there is strong circumstantial evidence to corroborate that it may have been coming from the passenger—after all, Taylor attended the evidentiary hearing with the odor of marijuana on his person.  Simply put, these facts gave rise to probable cause to search Apple's vehicle. *See United States v. Mosby*, 541 F.3d 764, 768 (7th Cir. 2008) (upholding probable cause finding when officer "smelled marijuana as he stood next to the minivan"); *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (noting that smell of marijuana is "simple and compelling foundation" for searching entire car); *United States v. Wimbush*, 337 F.3d 947, 950–51 (7th Cir. 2003) (noting that search of car was justified after officer smelled marijuana); *United States v. Mazzone*, 782 F.2d 757, 761 (7th Cir. 1986) (noting that odor of marijuana provides probable cause to search vehicle at least until likely source of odor is found).  The Court does not find Apple's and Taylor's alternative accounts credible.  Accordingly, suppression is not warranted on this basis.

## C.     <u>The Vehicle Search Was Overly Broad And Intrusive</u>.

Apple's final contention is that the search of his vehicle was overly broad and intrusive because officers "dismantled and removed the center console apparatus." (<u>Filing No. 66 at 8</u>.) However, "[w]hen conducting a search of a vehicle, police officers may conduct a search of a vehicle that is 'as thorough as a magistrate could authorize' if the stop of the vehicle was legitimate and police have probable cause to believe contraband is concealed somewhere in the vehicle." *United States v. Ross*, 456 U.S. 798, 800 (1982).  Apple's argument that officers impermissibly exceeded the scope of their search by lifting the tray holding the cup holders in the center console fails, because officers may "conduct a warrantless search of all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments and trunks." *Scott*, 516 F.3d at 589 (quotation omitted).  Accordingly, suppression is not warranted on this basis.

### III.   CONCLUSION

For the reasons set forth above, the Court **DENIES** Apple's Motion to Suppress Evidence (Filing No. 66). This matter remains scheduled for final pretrial conference on November 16, 2021 and jury trial on December 6, 2021. Again, because of the age of this case, the parties should anticipate no further continuances.

**SO ORDERED.**

Date:  9/30/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Jessie A. Cook
LAW OFFICE OF JESSIE A. COOK
jessieacook@icloud.com

Abhishek Kambli
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
abhishek.kambli@usdoj.gov